Moyer, C.J.
I. Introduction
{¶ 1} Petitioner Melisa Arbino initiated a products-liability action against respondents Johnson & Johnson, Ortho-McNeil Pharmaceutical, Inc., and John *469 son & Johnson Pharmaceutical Research & Development, L.L.C. (collectively, “Johnson & Johnson”) in 2006. She alleges that she suffered blood clots and other serious medical side effects from using the Ortho Evra Birth Control Patch, a hormonal birth-control medication that Johnson & Johnson created.
{¶ 2} The case was filed in the United States District Court for the Southern District of Ohio. Arbino’s complaint contains challenges to the constitutionality of four tort-reform statutes implemented by Am.Sub.S.B. No. 80 of the 125th General Assembly (“S.B. 80”) and made effective on April 7, 2005. Arbino then filed a motion for partial summary judgment on these challenges, leading respondent state of Ohio to intervene in the matter. While this motion was pending, the federal Judicial Panel on Multidistrict Litigation consolidated the case with other claims relating to the Ortho Evra patch before Judge David A. Katz in the United States District Court for the Northern District of Ohio, Western Division.
{¶ 3} Judge Katz certified four questions of state law for review pursuant to S.CLPrac.R. XVIII. We accepted three[1] of the questions:
{¶ 4} 1. “Is Ohio Revised Code § 2315.18 [limiting noneconomic damages in tort actions], as amended by Senate Bill 80, effective, April 7, 2005, unconstitutional on the grounds as stated by the Plaintiffs?”
{¶ 5} 2. “Is Ohio Revised Code § 2315.20 [admissibility of collateral-benefit evidence in tort actions], as amended by Senate Bill 80, effective, April 7, 2005, unconstitutional on the grounds as stated by the Plaintiffs?”
{¶ 6} 3. “Is Ohio Revised Code § 2315.21 [limiting punitive damages in tort actions], as amended by Senate Bill 80, effective, April 7, 2005, unconstitutional on the grounds as stated by the Plaintiffs?” 110 Ohio St.3d 1462, 2006-Ohio-4288, 852 N.E.2d 1212.
{¶ 7} Arbino argues that these statutes violate several provisions of the Ohio Constitution: the right to trial by jury in Section 5, Article I; the right to a remedy and the right to an open court in Section 16, Article I; the right to due process of law in Section 16, Article I; the right to equal protection of the laws in Section 2, Article I; the separation of powers, specifically the prohibition on the General Assembly exercising general judicial powers in Section 32, Article II; and the single-subject rule in Section 15(D), Article II.
{¶ 8} For the following reasons, we hold that R.C. 2315.18 and 2315.21 are facially constitutional. However, we decline to review R.C. 2315.20 because Arbino lacks standing to challenge that statute.
*470 II. Tort Reform in Ohio and Stare Decisis
{¶ 9} Before engaging in a specific analysis of these issues, it is necessary to briefly review the major tort-reform laws enacted by the General Assembly in recent history. Doing so provides the proper context for our decision and frames the necessary discussion of stare decisis.
{¶ 10} Since 1975, the General Assembly has adopted several so-called tort-reform acts, which were inevitably reviewed by this court. In the course of this review, we have examined several specific provisions that are similar in language and purpose to those at issue here; all of these similar statutes have been declared unconstitutional.
{¶ 11} The first reform provision we reviewed was former R.C. 2307.43, which was passed in the Ohio Medical Malpractice Act of 1975, Am.Sub.H.B. No. 682, 136 Ohio Laws, Part II, 2809 (“H.B. 682”). This statute placed a $200,000 cap on general medical-malpractice damages not involving death, with no exceptions for those suffering severe injuries. See Morris v. Savoy (1991), 61 Ohio St.3d 684, 686-687, 576 N.E.2d 765. The General Assembly passed this legislation to combat a perceived malpractice-insurance crisis. Id.
{¶ 12} Although it took several years for a challenge to be raised, we ultimately held that R.C. 2307.43 violated the due-process protections of the Ohio Constitution. We specifically noted that “ ‘[i]t is irrational and arbitrary to impose the cost of the intended benefit to the general public solely upon a class consisting of those most severely injured by medical malpractice.’ ” Id. at 691, 576 N.E.2d 765, quoting Nervo v. Pritchard (June 10, 1985), Stark App. No. CA-6560, at 8.
{¶ 13} The General Assembly’s next major enactment was the Tort Reform Act of 1987, Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661 (“H.B. 1”), which sought to change civil-justice and insurance law to alleviate another “insurance crisis.” See Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 419-420, 633 N.E.2d 504.
{¶ 14} In Sorrell, we examined one facet of this law, R.C. 2317.45, which placed a significant limitation on the collateral-source rule adopted in Pryor v. Webber (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235. The H.B. 1 version of R.C. 2317.45 required the trial court to subtract certain collateral benefits from a plaintiffs final award of compensatory damages. Former R.C. 2317.45(B)(2)(c)(i), 142 Ohio Laws, Part 1,1696 (effective Jan. 5,1988). We held that this mandatory deduction of collateral benefits violated the right to a jury trial, due process, equal protection, and the right to a remedy. See Sorrell, 69 Ohio St.3d 415, 633 N.E.2d 504, syllabus.
{¶ 15} In Galayda v. Lake Hosp. Sys., Inc. (1994), 71 Ohio St.3d 421, 644 N.E.2d 298, we reviewed former R.C. 2323.57, another tort-reform statute. This statute required trial courts to order awards of future damages in excess of *471 $200,000 in medical-malpractice actions to be paid in a series of periodic payments upon the motion of any party. Former R.C. 2323.57(C), 142 Ohio Laws, Part II, 3333 (effective Oct. 20, 1987). We deemed that statute unconstitutional as a violation of the right to a jury trial and of the Due Process Clause of the Ohio Constitution. Id., paragraph one of the syllabus.
{¶ 16} We returned to our review of H.B. 1 in Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, in which we examined former R.C. 2315.21(C)(2). That statute required a trial judge to determine the amount of punitive damages to be awarded in a tort action, even when the trier of fact was a jury. Former R.C. 2315.21(C)(2), 142 Ohio Laws, Part I, 1690-1691 (effective Jan. 5, 1988). We struck this section as a violation of the right to a jury trial in the Ohio Constitution. Zoppo, paragraph two of the syllabus.
{¶ 17} Finally, the General Assembly passed substantial reforms in 1997 with Am.Sub.H.B. No. 350, 146 Ohio Laws, Part II, 3867 (“H.B. 350”). The legislation amended, enacted, or repealed over 100 sections of the Revised Code contained in 18 titles and 38 chapters. Among other things, it modified the collateral-source rule in tort actions to require the trier of fact to consider but not automatically set off collateral benefits (former R.C. 2317.45), capped punitive damages and allowed the trier of fact to determine damages up to the cap in tort and products-liability claims (former R.C. 2315.21(D)(1)), and capped noneconomic damages at different levels, with higher limits for permanent injuries (former R.C. 2323.54).
{¶ 18} Although we examined and discussed several subsections of the law in our review, we ultimately found H.B. 350 to be unconstitutional in toto as a violation of the separation of powers and the single-subject clause of the Ohio Constitution. State ex rel. Ohio Academy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062, paragraphs two and three of'the syllabus.
{¶ 19} Citing Morris, Sorrell, Galayda, Zoppo, and Sheward as precedent, Arbino argues that the portions of S.B. 80 at issue here are functionally identical to the statutes this court held to be unconstitutional in those cases. She alleges that the principle of stare decisis therefore requires us to declare the statutes here unconstitutional as well. We disagree.
{¶ 20} The protracted interbranch tension on this subject establishes at least two key points. First, tort reform has been a major issue of concern in this state over the past several decades and remains one today. Ohio is hardly unique in this regard, as such reforms have been raised in nearly every state in the nation. State legislatures and judiciaries have differed widely in their responses to this issue, and a definite split in authority is clear. See Section IV. The federal judiciary has been drawn to the issue as well, with the United States Supreme *472 Court offering guidance on several key issues over the past few years, most notably regarding punitive-damages awards.[2]
{¶ 21} A fundamental principle of the constitutional separation of powers among the three branches of government is that the legislative branch is “the ultimate arbiter of public policy.” State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21. It necessarily follows that the legislature has the power to continually create and refine the laws to meet the needs of the citizens of Ohio. The fact that the General Assembly has repeatedly sought to reform some aspects of the civil tort system for over 30 years demonstrates the continuing prominence of this issue.
{¶ 22} Second, even considering the numerous opinions by this court on this issue, the basic constitutionality of tort-reform statutes is hardly settled law. Our prior review has focused on certain unconstitutional facets of the prior tort-reform laws that can be addressed to create constitutionally valid legislation. We have not dismissed all tort reform as an unconstitutional concept.
{¶ 23} While stare decisis applies to the rulings rendered in regard to specific statutes, it is limited to circumstances “where the facts of a subsequent case are substantially the same as a former case.” Rocky River v. State Emp. Relations Bd. (1989), 43 Ohio St.3d 1, 5, 539 N.E.2d 103. We will not apply stare decisis to strike down legislation enacted by the General Assembly merely because it is similar to previous enactments that we have deemed unconstitutional. To be covered by the blanket of stare decisis, the legislation must be phrased in language that is substantially the same as that which we have previously invalidated.
{¶ 24} A careful review of the statutes at issue here reveals that they are more than a rehashing of unconstitutional statutes. In its continued pursuit of reform, the General Assembly has made progress in tailoring its legislation to address the constitutional defects identified by the various majorities of this court. The statutes before us here are sufficiently different from the previous enactments to avoid the blanket application of stare decisis and to warrant a fresh review of their individual merits.
*473 III. Standard of Review
{¶ 25} It is difficult to prove that a statute is unconstitutional. All statutes have a strong presumption of constitutionality. See Sorrell, 69 Ohio St.3d at 418-419, 633 N.E.2d 504. Before a court may declare unconstitutional an enactment of the legislative branch, “it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.” State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.
{¶ 26} A party seeking constitutional review of a statute may proceed in one of two ways: present a facial challenge to the statute as a whole or challenge the statute as applied to a specific set of facts. Harrold v. Collier, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. Instead of arguing that these statutes are unconstitutional as applied to the facts of her case, Arbino has raised a facial challenge to each of them. To successfully present such a challenge, she must demonstrate that there is no set of circumstances in which each statute would be valid. Id., citing United States v. Salerno (1987), 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697. “The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid.” Harrold at ¶ 37. Mindful of this strict standard of review, we proceed to the merits of the certified questions.
A. Limits on Noneconomic Damages in R.C. 2315.18
{¶27} The first certified question concerns the constitutionality of R.C. 2315.18. The statute provides a basic procedure for the imposition of damages in certain tort actions.[3] After a verdict has been reached for the plaintiff in one of the specified tort actions, the court (in a bench trial) will enter findings of fact or the jury (in a jury trial) will return a general verdict accompanied by answers to interrogatories. R.C. 2315.18(D). In either case, these findings or interrogatories will specify both the total compensatory damages recoverable by the plaintiff and the portions of those damages representing economic and noneconomic losses.[4] Id. at (D)(1) through (3).
*474 {¶ 28} Thereafter, the court must enter judgment for the plaintiff for the amount of economic damages, without limitation, as determined by the trier of fact. Id. at (B)(1) and (E)(1). For noneconomic damages, the court must limit recovery to the greater of (1) $250,000 or (2) three times the economic damages up to a maximum of $350,000, or $500,000 per single occurrence. Id. at (B)(2). However, these limits on noneconomic damages do not apply if the plaintiff suffered “[pjermanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system,” or “[pjermanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities.” Id. at (B)(3)(a) through (b).
{¶ 29} Arbino challenges this statute on several grounds.
1. Right to a Trial by Jury
{¶ 30} Arbino initially contends that R.C. 2315.18 violates the right to a trial by jury. The relevant constitutional language states that “[tjhe right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury.” Section 5, Article I, Ohio Constitution.
{¶ 31} This right serves as one of the most fundamental and long-standing rights in our legal system, having derived originally from the Magna Carta. See Cleveland Ry. Co. v. Halliday (1933), 127 Ohio St. 278, 284, 188 N.E. 1. It was “[djesigned to prevent government oppression and to promote the fair resolution of factual issues.” Arrington v. DaimlerChrysler Corp., 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, ¶ 21. As Thomas Jefferson stated, the right to trial by jury is “the only anchor, ever yet imagined by man, by which a government can be held to the principles of it’s [sic] constitution.” Letter from Thomas Jefferson to Thomas Paine (July 11, 1789), reprinted in 15 The Papers of Thomas Jefferson (Boyd Ed.1958) 269.
{¶ 32} However, the right is not absolute. See Arrington at ¶ 22. Section 5, Article I guarantees a right to a jury trial only for those causes of action in which the right existed in the common law when Section 5 was adopted. See Belding v. State ex rel. Heifner (1929), 121 Ohio St. 393, 169 N.E. 301, paragraph one of the *475 syllabus. It is settled that the right applies to both negligence and intentional-tort actions. See Arrington at ¶ 24.
{¶ 33} Arbino claims that this provision necessarily includes the right to have a jury determine the full amount of a plaintiffs damages. Thus, she argues that any limitations on the process, such as the damages caps in R.C. 2315.18, unconstitutionally infringe upon this “inviolate” right. We are not persuaded.
{¶ 34} To properly approach this issue, one must define what exactly is guaranteed under this right. We are guided by long-standing precedent in this regard: “The right thus intended to be secured by the constitution, was the right of trial by jury as it was recognized by the common law; and within the right thus secured is the right of either party, in an action for the recovery of money only, to demand that the issues of fact therein be tried by a jury.” (Emphasis added.) Dunn v. Kanmacher (1875), 26 Ohio St. 497, 502-503. In short, the right to trial by jury protects a plaintiffs right to have a jury determine all issues of fact in his or her case. See Sorrell, 69 Ohio St.3d at 422, 633 N.E.2d 504, citing Miller v. Wikel Mfg. Co. (1989), 46 Ohio St.3d 76, 81, 545 N.E.2d 76 (Douglas, J., concurring in part and dissenting in part). Because the extent of damages suffered by a plaintiff is a factual issue, it is within the jury’s province to determine the amount of damages to be awarded. See Sorrell.
{¶ 35} Section 5, Article I of the Ohio Constitution clearly protects this fact-finding function from outside interference. Any law that prevents the jury from completing this task or allows another entity to substitute its own findings of fact is unconstitutional. We reaffirmed this principle in Sorrell by striking down a statute that required a court to determine any collateral benefits received by a plaintiff and deduct them from a jury award, regardless of whether those benefits were duplicated in the award. Sorrell, 69 Ohio St.3d at 422, 633 N.E.2d 504. This statute was unconstitutional because it allowed courts to ignore the jury’s finding of facts on collateral benefits. Id.
{¶ 36} However, the fact that the jury’s fact-finding function is protected does not mean jury awards are insulated from all outside influences.
{¶ 37} So long as the fact-finding process is not intruded upon and the resulting findings of fact are not ignored or replaced by another body’s findings, awards may be altered as a matter of law. There is no dispute that the right to a trial by jury does not extend to the determination of questions of law. See Conley v. Shearer (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862. Thus, without violating the Constitution, a court may apply the law to the facts determined by a jury.
{¶ 38} We have recognized several ways in which a court may apply the law to change a jury award of damages without running afoul of the Constitution. For example, courts have the inherent authority to order remittiturs to reduce jury *476 awards when they deem the amount to be excessive based on the facts found by the jury. See Wightman v. Consol. Rail Corp. (1999), 86 Ohio St.3d 431, 444, 715 N.E.2d 546 (noting, though, that the successful plaintiff must consent to such an order).
{¶ 39} Additionally, there are numerous statutes that treble jury damages awards in certain causes of action. See, e.g., R.C. 901.51 (unauthorized removal of timber), 1331.08 (Valentine Act violations), 1345.09 (Consumer Sales Practices Act violations), 2307.61 (willful damage to or theft of property), 2923.34(E) (engaging in a pattern of corrupt activity), and 4905.61 (public-utilities-law violations). In each of these statutes, the General Assembly demonstrated a clear policy choice to modify the amount of jury awards. We have never held that the legislative choice to increase a jury award as a matter of law infringes upon the right to a trial by jury; the corresponding decrease as a matter of law cannot logically violate that right. See Hemmings v. Tidyman’s, Inc. (C.A.9, 2002), 285 F.3d 1174, 1202.
{¶ 40} So it must be with R.C. 2315.18. By limiting noneconomic damages for all but the most serious injuries, the General Assembly made a policy choice that noneconomic damages exceeding set amounts are not in the best interest of the citizens of Ohio. The statute is distinguishable from those allowing courts to substitute their own findings of fact on collateral benefits or requiring repayment plans that “further reduce the jury’s award of damages already once reduced to present value.” Galayda, 71 Ohio St.3d at 425, 644 N.E.2d 298. Courts must simply apply the limits as a matter of law to the facts found by the jury; they do not alter the findings of facts themselves, thus avoiding constitutional conflicts.
{¶ 41} Such limitations are also permissible under the analogous Seventh Amendment right to a jury trial in the federal system. “Federal courts uniformly have held that statutory damages caps do not violate the Seventh Amendment, largely because a court does not ‘reexamine’ a jury’s verdict or impose its own factual determination regarding what a proper award might be. Rather, the court simply implements a legislative policy decision to reduce the amount recoverable to that which the legislature deems reasonable.” (Footnote omitted.) Estate of Sisk v. Manzanares (D.Kan.2003), 270 F.Supp.2d 1265, 1277-1278.
{¶ 42} Because R.C. 2315.18 follows these principles, it does not offend the right to a trial by jury under Section 5, Article I of the Ohio Constitution.
2. Open Courts and Right to a Remedy
{¶ 43} Arbino also argues that R.C. 2315.18 violates Ohio’s “open courts” and “right to a remedy” provisions. The Constitution provides: “All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice *477 administered without denial or delay.” (Emphasis added.) Section 16, Article I, Ohio Constitution.
{¶ 44} The definition of these rights is well settled. “When the Constitution speaks of remedy and injury to person, property, or reputation, it requires an opportunity granted at a meaningful time and in a meaningful manner.” Hardy v. VerMeulen (1987), 32 Ohio St.3d 45, 47, 512 N.E.2d 626. We have interpreted this provision to prohibit statutes that effectively prevent individuals from pursuing relief for their injuries. See, e.g., Brennaman v. R.M.I. Co. (1994), 70 Ohio St.3d 460, 466, 639 N.E.2d 425 (finding a statute of repose unconstitutional because it deprived certain plaintiffs of the right to sue before they were aware of their injuries); Gaines v. Pretemu-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 60-61, 514 N.E.2d 709 (declaring a statute of repose unconstitutional because it did not give certain litigants the proper time to file an action following discovery of their claims).
{¶ 45} A statute need not “completely abolish the right to open courts” to run afoul of this section. Sorrell, 69 Ohio St.3d at 426, 633 N.E.2d 504. Any enactment that eliminates an individual’s right to a judgment or to a verdict properly rendered in a suit will also be unconstitutional. See id. Thus, we struck down the statute in Sorrell under circumstances “where the collateral source benefits reduce the entire jury award! (Emphasis added.) Id. When an individual is wholly foreclosed from relief after a verdict is rendered in his or her favor, the rights to “a meaningful remedy and open courts become hollow rights hardly worth exercising.” Id.
{¶ 46} Arbino states that R.C. 2315.18 violates this provision because it “denies any recovery for noneconomic damages for the increment of harm greater than $250,000.” (Emphasis sic.) We disagree.
{¶ 47} Although R.C. 2315.18 does limit certain types of noneconomic damages, those limits do not wholly deny persons a remedy for their injuries. Injured persons not suffering the catastrophic injuries in R.C. 2315.18(B)(3) (for which there are no damages limits) may still recover their full economic damages and up to $350,000 in noneconomic damages, as well as punitive damages. These available remedies are “meaningful” ones under the Constitution. While the statute prevents some plaintiffs from obtaining the same dollar figures they may have received prior to the effective date of the statute, it neither forecloses their ability to pursue a claim at all nor “completely obliterates the entire jury award.” Sorrell, 69 Ohio St.3d at 426, 633 N.E.2d 504. Therefore, R.C. 2315.18 does not violate the right to a remedy or the right to an open court under Section 16, Article I of the Ohio Constitution.
*478 3. Due Course of Law/Due Process
{¶ 48} Arbino’s next challenge to R.C. 2315.18 also arises from Section 16, Article I, specifically, the “due course of law” provision. We have recognized this provision as the equivalent of the “due process of law” protections in the United States Constitution. Sorrell, 69 Ohio St.3d at 422-423, 633 N.E.2d 504, citing Direct Plumbing Supply Co. v. Dayton (1941), 138 Ohio St. 540, 544, 21 O.O. 422, 38 N.E.2d 70.
{¶ 49} When reviewing a statute on due-process grounds, we apply a rational-basis test unless the statute restricts the exercise of fundamental rights. Morris, 61 Ohio St.3d at 688-689, 576 N.E.2d 765; Sorrell, 69 Ohio St.3d at 423, 633 N.E.2d 504. Because we have already concluded that R.C. 2315.18 violates neither the right to a jury trial nor the right to a remedy, we must find it valid under the rational-basis test “ ‘[1] if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and [2] if it is not unreasonable or arbitrary.’ ” Mominee v. Scherbarth (1986), 28 Ohio St.3d 270, 274, 28 OBR 346, 503 N.E.2d 717, quoting Benjamin v. Columbus (1957), 167 Ohio St. 103, 4 O.O.2d 113, 146 N.E.2d 854, paragraph five of the syllabus. Under this test, we must examine the record to determine whether there is evidence to support such a relationship. See Morris, 61 Ohio St.3d at 690, 576 N.E.2d 765.
{¶ 50} As a preliminary matter, Arbino argues that we have consistently held that there is no rational relationship “between restrictions on recovery in meritorious cases of serious injury and the deterrence of meritless claims.” She cites both Morris and Sheward for this proposition, arguing that the type of noneconomic-damages caps found in R.C. 2315.18 can never be justified under the Due Process Clause.
{¶ 51} However, those cases did not create a bright-line rule that there can never be a real and substantial relation between a restriction on recovery and a legitimate governmental interest. In Morris, we found no evidence in the record of that case demonstrating a connection between awards in excess of the statutory limits and rising malpractice-insurance rates. Morris, 61 Ohio St.3d at 690, 576 N.E.2d 765 (‘We are unable to find, either in the amici briefs or elsewhere, any evidence to buttress the proposition that there is a rational connection”).
{¶ 52} Further, although Sheward offered an abundance of dicta on several statutes in H.B. 350, the ultimate holding was that H.B. 350 was unconstitutional in toto as a violation of the separation of powers and of the single-subject clause. Sheward, 86 Ohio St.3d 451, 715 N.E.2d 1062, paragraphs two and three of the syllabus. The dicta pronounced on other issues does not extend to the statute here. Thus, we must now determine whether R.C. 2315.18 meets the two prongs of the rational-basis test.
*479 a. Real and substantial relation to the general welfare of the public
{¶ 53} The record here reveals that the General Assembly reviewed several forms of evidence and made numerous findings relative to R.C. 2315.18. In an uncodified section of S.B. 80, it found that the current state of the civil litigation system “represents a challenge to the economy of the state of Ohio.” S.B. 80, Section 3(A)(1), 150 Ohio Laws, Part V, 8024. This finding was supported by (1) a National Bureau of Economic Research study showing that states adopting tort reforms experienced growth in employment, productivity, and total output, (2) a 2002 White House Council on Economic Advisors study equating the cost of tort litigation to a 2.1 percent wage and salary tax, a 1.3 percent personal-consumption tax, and a 3.1 percent capital-investment-income tax, (3) a Harris Poll of 928 senior corporate attorneys showing that the litigation environment in a state greatly affected the business decisions of their companies, (4) a TillinghasLTowers Perrin study showing that the tort system failed to return even 50 cents for every dollar to injured plaintiffs and that the cost of the national tort system grew at a record rate in 2001, with a cost equivalent to a five percent tax on wages, and (5) testimony from Ohio Department of Development Director Bruce Johnson on the rising costs of the tort system, which he believed were putting Ohio businesses at a disadvantage and hindering development. S.B. 80 at Section 3(A)(3)(a) through (f), 150 Ohio Laws, Part V, 80021-80025.
{¶ 54} In addition to these general economic concerns, the General Assembly noted that noneconomic damages are difficult to calculate and lack a precise economic value. Id. at Section 3(A)(6)(a). It further concluded that such damages, which should be awarded for a plaintiffs pain and suffering and similar injuries as set forth in R.C. 2315.18(A)(4), are inherently subjective and susceptible to influence from irrelevant factors, such as the defendant’s wrongdoing. Id. at Section 3(A)(6)(d). It also recognized that inflated damages awards were likely under the then current system and that the cost of these awards was being passed on to the general public. Id. at Section 3(A)(6)(d) and (e).
{¶ 55} Viewing these findings as a whole, we conclude that R.C. 2315.18 bears a real and substantial relation to the general welfare of the public. The General Assembly reviewed evidence demonstrating that uncertainty related to the existing civil litigation system and rising costs associated with it were harming the economy. It noted that noneconomic damages are inherently subjective and thus easily tainted by irrelevant considerations. The implicit, logical conclusion is that the uncertain and subjective system of evaluating noneconomic damages was contributing to the deleterious economic effects of the tort system.
{¶ 56} Unlike the records in Moms and Sorrell, which we criticized as lacking evidence demonstrating a rational connection between the tort reforms taken and the public good to be achieved, the record here draws a clear connection between *480 limiting uncertain and potentially tainted noneconomic-damages awards and the economic problems demonstrated in the evidence. See Moms, 61 Ohio St.3d at 690, 576 N.E.2d 765; Sorrell, 69 Ohio St.3d at 423, 633 N.E.2d 504. In seeking to correct these problems, the General Assembly acted in the public’s interests, which is all that is required under the first prong of the due-process analysis.
{¶ 57} Arbino assails the specific evidence amassed by the General Assembly in this regard, labeling it “threadbare” and “specious.” She challenges the persuasiveness of these findings and argues that the crisis proposed by the evidence is nonexistent. In doing so, she asks us to evaluate the information relied upon by the General Assembly and come to our own conclusions as to whether R.C. 2315.18 was warranted.
{¶ 58} Such an intensive reexamination is beyond the scope of our review. In an equal-protection context, we noted in State v. Williams (2000), 88 Ohio St.3d 513, 531, 728 N.E.2d 342, that “we are to grant substantial deference to the predictive judgment of the General Assembly” under a rational-basis review. Further, as the United States Supreme Court has stated, “it is not the function of the courts to substitute their evaluation of legislative facts for that of the legislature.” Minnesota v. Clover Leaf Creamery Co. (1981), 449 U.S. 456, 470, 101 S.Ct. 715, 66 L.Ed.2d 659. Finding that the General Assembly’s review of the evidence yielded a statute that bears a real and substantial relation to the general welfare of the public, we need not cross-check its findings to ensure that we would agree with its conclusions, b. Neither arbitrary nor unreasonable
{¶ 59} The second prong of the rational-basis test asks whether the statute is arbitrary or unreasonable. In Morris, we found that the damages caps violated this prong because they imposed the cost of the intended benefit to the public solely upon those most severely injured. Id., 61 Ohio St.3d at 690-691, 576 N.E.2d 765. We repeated this concern in Sheward, albeit in dicta. Sheward, 86 Ohio St.3d at 490, 715 N.E.2d 1062.
{¶ 60} R.C. 2315.18 alleviates this concern by allowing for limitless noneconomic damages for those suffering catastrophic injuries. R.C. 2315.18(B)(3)(a) and (b). Arbino suggests that even with this exception for catastrophic injuries, the noneconomic-damages limitations remain unreasonable and arbitrary. She argues further that it is irrational to strike a statute for imposing the costs of a public benefit on the most severely injured, but not the “second-most severely injured.”
{¶ 61} At some point, though, the General Assembly must be able to make a policy decision to achieve a public good. Here, it found that the benefits of noneconomic-damages limits could be obtained without limiting the recovery of individuals whose pain and suffering is traumatic, extensive, and chronic, and by *481 setting the limits for those not as severely injured at either $250,000 or $350,000. Even Arbino acknowledges that the vast majority of noncatastrophic tort cases do not reach that level of damages. Id. The General Assembly’s decision is tailored to maximize benefits to the public while limiting damages to litigants. The logic is neither unreasonable nor arbitrary.
{¶ 62} For those reasons, R.C. 2315.18 does not violate the due-process protections in Section 16, Article I of the Ohio Constitution.
4. Equal Protection
{¶ 63} Arbino also challenges R.C. 2315.18 on equal-protection grounds. The Ohio Constitution states: “All political power is inherent in the people. Government is instituted for their equal protection and benefit.” Section 2, Article I, Ohio Constitution. We have interpreted this provision as the equivalent of the federal Equal Protection Clause. See McCrone v. Bank One Corp., 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 7.
a. Standard of review
{¶ 64} The first step in an equal-protection analysis is determining the proper standard of review. When legislation infringes upon a fundamental constitutional right or the rights of a suspect class, strict scrutiny applies. See State v. Williams, 88 Ohio St.3d at 530, 728 N.E.2d 342. If neither a fundamental right nor a suspect class is involved, a rational-basis test is used. See Menefee v. queen City Metro (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181.
{¶ 65} In arguing for strict scrutiny, Arbino alleges that R.C. 2315.18 infringes on both a fundamental right (the right to a jury trial) and the rights of suspect classes (she specifically claims that damages caps disproportionately affect women, children, minorities, the elderly, and people with low incomes). We rejected the fundamental-right argument in Section III.A.1 above. Further, even if we accepted Arbino’s contention that the noneconomic-damages caps disproportionately affect certain classes, facially neutral laws that may have such an impact do not violate the Equal Protection Clause. See Washington v. Davis (1976), 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597; see also Massachusetts Personnel Admr. v. Feeney (1979), 442 U.S. 256, 273, 99 S.Ct. 2282, 60 L.Ed.2d 870 (“the Fourteenth Amendment guarantees equal laws, not equal results”).
{¶ 66} Finding R.C. 2315.18 to be facially neutral, we apply the rational-basis test. This test requires that a statute be upheld if it is rationally related to a legitimate government purpose. See Williams, 88 Ohio St.3d at 530, 728 N.E.2d 342. Under such a review, a statute will not be invalidated if it is grounded on a reasonable justification, even if its classifications are not precise. See McCrone, 107 Ohio St.3d 272. 2005-Ohio-6505, 839 N.E.2d 1, ¶ 8.
*482 b. Rational relationship to a legitimate government purpose
{¶ 67} The limitations on noneconomic-damages awards in certain tort actions in R.C. 2315.18 certainly create distinctions between different groups of people. In setting a cap of either $250,000 or $350,000 on noneconomic damages for certain injuries and no caps on others, the statute treats those with lesser injuries, i.e., those not suffering the injuries designated in R.C. 2315.18(B)(3), differently from those most severely injured.
{¶ 68} The General Assembly’s general justification for the tort reforms in S.B. 80 was that the state has an “interest in making certain that Ohio has a fair, predictable system of civil justice that preserves the rights of those who have been harmed by negligent behavior, while curbing the number of frivolous lawsuits, which increases the cost of doing business, threatens Ohio jobs, drives up costs to consumers, and may stifle innovation.” S.B. 80, Section 3(A)(3), 150 Ohio Laws, Part V, 8024. As noted in the due-process discussion, the General Assembly reviewed several studies and other forms of evidence to reach this conclusion. Id. at 8024-8025, Section 3(A)(3)(a) through (f). In regard to noneconomic injuries, it noted that awards for such injuries are inherently subjective and susceptible to improper inflation. Id. at Section 3(A)(6)(a), (c), and (d). It also found that “[ijnflated damage awards create an improper resolution of civil justice claims.” Id. at (e).
{¶ 69} After reviewing these findings, we conclude that R.C. 2315.18 is rationally related to the legitimate state interests of reforming the state civil justice system to make it fairer and more predictable and thereby improving the state’s economy. One cannot deny that noneconomic-damages awards are inherently subjective and difficult to evaluate. The uncertainty associated with such damages logically leads to a lack of predictability as well as the occasional influence of irrelevant factors such as a defendant’s improper actions. While such uncertainty and the specter of improper influences are serious concerns on their own, the General Assembly reviewed and cited evidence that these issues are having real, deleterious effects on state economies across the nation, including Ohio.
{¶ 70} The noneconomic-damages limits created in R.C. 2315.18 may or may not be the best way to address the perceived problems in the civil justice system. Arbino offered numerous challenges to the evidence, suggesting that it was overly focused on national issues, biased toward one side of the argument, and lacked the verifiability and credibility offered by peer review. We note these concerns and acknowledge that tort reform is a contentious issue across the country.
{¶ 71} However, the General Assembly is charged with making the difficult policy decisions on such issues and codifying them into law. This court is not the forum in which to second-guess such legislative choices; we must simply determine whether they comply with the Constitution. See State ex rel. Ohio *483 Congress of Parents & Teachers v. State Bd. of Edn., 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 20.
{¶ 72} In that function, we cannot say that the General Assembly’s action lacked all rational relation to the legitimate state interest of improving the state’s civil justice system and its economy. The limitations were aimed at reducing the uncertainty associated with the existing tort system and the negative consequences resulting from it. The distinctions the legislature drew in refusing to limit certain injuries were rational and based on the conclusion that catastrophic injuries offer more concrete evidence of noneconomic damages and thus calculation of those damages poses a lesser risk of being tainted by improper external considerations. That reasoning withstands scrutiny under the rational-basis test. Therefore, R.C. 2315.18 does not violate the right to equal protection under Section 2, Article I of the Ohio Constitution.
5. Separation of Powers
{¶ 73} Arbino’s next challenge to R.C. 2315.18 is that it violates the separation of powers among the three branches of government, particularly between the legislative and judicial branches. Ohio’s Constitution states: “The general assembly shall grant no divorce, nor exercise any judicial power, not herein expressly conferred.” Section 32, Article II, Ohio Constitution. Arbino argues that the statute both “arrogates to the legislature the exclusively judicial power to decide damages for personal injuries” and represents an impermissible reenactment of legislation previously found unconstitutional. These claims are addressed in turn.
{¶ 74} The argument that R.C. 2315.18 infringes on the judicial power to decide damages lacks merit. It is certainly a judicial function to decide the facts in a civil case, and the amount of damages is a question of fact. Huntington & Finke Co. v. Lake Erie Lumber Supply Co. (1924), 109 Ohio St. 488, 502, 143 N.E. 132. However, that function is not so exclusive as to prohibit the General Assembly from regulating the amount of damages available in certain circumstances. As noted in Section III.A.1, there are numerous statutes trebling damages for various causes of action; under Arbino’s logic, these statutes would also abrogate judicial authority. Section 32, Article II does not provide such strict limitations on the General Assembly’s powers.
{¶ 75} Arbino’s contention that the General Assembly reenacted legislation previously deemed unconstitutional also fails. Her argument is largely premised on Sheward. There, we found that the General Assembly’s actions amounted to an attempt “to establish itself as the final arbiter of the validity of its own legislation.” Sheward, 86 Ohio St.3d at 492, 715 N.E.2d 1062.
*484 {¶ 76} To conclude in this case as the majority concluded in Sheward would require us to determine that the General Assembly passed statutory provisions so similar to those previously deemed unconstitutional that its actions could only be interpreted as an invasion of the solely judicial right to interpret the Constitution. See id. at 493-494, 715 N.E.2d 1062. As noted above, R.C. 2315.18 is sufficiently different from the previous noneconomic-damages caps to warrant both a fresh review of its merits and approval of its validity. The General Assembly obviously does not violate the separation of powers by looking to this court’s interpretation of the Constitution for guidance in creating constitutional legislation. Therefore, R.C. 2315.18 does not violate Section 32, Article II of the Ohio Constitution.
6. Single-Subject Rule
{¶ 77} Finally, Arbino challenges R.C. 2315.18 under the single-subject rule in Section 15(D), Article II, which states that “[n]o bill shall contain more than one subject, which shall be clearly expressed in its title.”
{¶ 78} This provision exists to prevent the General Assembly from engaging in “logrolling.” State ex rel. Dix v. Celeste (1984), 11 Ohio St.3d 141, 142, 11 OBR 436, 464 N.E.2d 153. This practice occurs when legislators combine a disharmonious group of proposals in a single bill so that they may consolidate votes and pass provisions that may not have been acceptable to a majority on their own merits. See id. at 142-143, 11 OBR 436, 464 N.E.2d 153. “The one-subject provision attacks logrolling by disallowing unnatural combinations of provisions in acts, ie., those dealing with more than one subject, on the theory that the best explanation for the unnatural combination is a tactical one — logrolling.” Id. at 143, 11 OBR 436, 464 N.E.2d 153. Arbino argues that S.B. 80 violates this provision by combining a variety of vastly different subjects under one title, lumping such subjects as Board of Cosmetology membership (R.C. 4713.02) and practice protocols for retired dentists (R.C. 4715.42) with the tort reforms discussed herein.
{¶ 79} However, unlike in Sheward, where we were asked to examine H.B. 350 in its entirety, the review here is limited to three specific statutes within S.B. 80. Because the entire enactment was not made an issue in this case, we cannot determine whether it violates the single-subject rule as a whole, and therefore decline to rule on this issue.
7. Constitutionality of R.C. 2315.18
{¶ 80} R.C. 2315.18 does not violate the right to a trial by jury, the right to a remedy, the right to an open court, the right to due process of law, the right to equal protection of the laws, or the separation of powers, and is therefore constitutional on its face.
*485 B. Admissibility of Collateral-Benefit Evidence in R.C. 2315.20
{¶ 81} The second certified question concerns the constitutionality of R.C.
2315.20. This statute modifies the collateral-source rule, which has been defined as “ ‘the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanates from sources other than the wrongdoer.’ ” Pryor v. Webber (1970), 23 Ohio St.2d 104, 107, 52 O.O.2d 395, 263 N.E.2d 235, quoting Maxwell, The Collateral Source Rule in the American Law of Damages (1962), 46 Minn.L.Rev. 669, 670.
{¶ 82} R.C. 2315.20 modifies this rule by allowing the defendant in a tort action to introduce evidence of amounts payable to the plaintiff as a result of the injuries suffered unless “the source of collateral benefits has a mandatory self-effectuating right of subrogation or” a contractual or statutory right of subrogation or the benefits were from a life insurance or disability plan. R.C. 2315.20(A). Life insurance or disability payments may still be introduced into evidence if the policies were paid for by the plaintiffs employer and the employer is the defendant. Id. If a defendant chooses to introduce such evidence, R.C. 2315.20 allows the plaintiff to introduce evidence of the amounts paid to secure the right to receive the benefits. Id. at (B).
{¶ 83} After initially challenging the constitutionality of this statute in her motion for partial summary judgment, Arbino realized through discovery that her insurance contract contains a subrogation clause. Given this information, she has conceded that she lacks standing to challenge the statute, but nevertheless asks us to deem it invalid.
{¶ 84} Since R.C. 2315.20 does not apply to Arbino, we are bound not to consider her challenge to it. Every court must “refrain from giving opinions on abstract propositions and * * * avoid the imposition by judgment of premature declarations or advice upon potential controversies.” Fortner v. Thomas (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371. It is well-settled law that this court will not issue such advisory opinions. See Egan v. Natl. Distillers & Chem. Corp. (1986), 25 Ohio St.3d 176, 25 OBR 243, 495 N.E.2d 904, syllabus. We therefore decline to answer the second certified question.
C. Punitive-Damages Limits in R.C. 2315.21
{¶ 85} The third certified question concerns the constitutionality of R.C. 2315.21, which limits the recovery of punitive damages in certain tort actions.[5] *486 The S.B. 80 amendments to this section included a procedure for bifurcation of proceedings for compensatory and punitive damages and a limitation on the amount of punitive damages recoverable in tort actions. R.C. 2315.21(B) and (D). Arbino has not challenged the bifurcation process, instead focusing her attack on the punitive-damages limitations.
{¶ 86} The statute limits punitive damages in tort actions to a maximum of two times the total amount of compensatory damages awarded to a plaintiff per defendant. Id. at (D)(2)(a). However, these limitations do not apply if the defendant committed a felony in causing the injury, one of the elements of the felony is that it was committed purposely or knowingly, and the defendant was convicted of or pleaded guilty to the felony. Id. at (D)(6).
{¶ 87} If the limitations do apply, punitive damages may be limited further if the defendant is a “small employer” [6] or an individual. R.C. 2315.21(D)(2)(b). In that case, the punitive damages may not exceed “the lesser of two times the amount of the compensatory damages awarded to the plaintiff from the defendant or ten percent of the employer’s or individual’s net worth when the tort was committed, up to a maximum of three hundred fifty thousand dollars.” Id.
{¶ 88} Additionally, punitive damages may not be awarded more than once against the same defendant for the same act or course of conduct once the maximum amount of damages has been reached. R.C. 2315.21(D)(5)(a). However, this restriction can be overcome if the plaintiff offers new and substantial evidence of previously undiscovered behaviors for which punitive damages are appropriate or the prior awards against the defendant were “totally insufficient” to punish the defendant. Id. at (D)(5)(b)© and (ii).
{¶ 89} Arbino presents the same constitutional challenges to this statute that she raised against R.C. 2315.18. Her arguments are addressed in turn.
1. Right to a Trial by Jury
{¶ 90} Arbino’s first challenge to this statute is that it violates the right to a trial by jury under Section 5, Article I of the Ohio Constitution. As explained in Section III.A.1, the fact that a statute limits potential damages as a matter of law does not mean that it violates the right to a jury trial. Therefore, Arbino’s challenge to R.C. 2315.21 can succeed only if the statute actually intrudes upon the jury’s fact-finding function.
*487 {¶ 91} To make her case, Arbino cites our decisions in Zoppo and Sheward. She cites Zoppo, 71 Ohio St.3d at 557, 644 N.E.2d 397, for the proposition that “Ohio courts have consistently understood that all damages, without distinction as to type, are for the jury to determine as part of the jury trial right.”
{¶ 92} However, Zoppo examined a statute that required trial courts to determine the amount of punitive damages to be awarded, even if the jury was the trier of fact. Zoppo, 71 Ohio St.3d at 556, 644 N.E.2d 397, quoting former R.C. 2315.21(C)(2). We struck that statute as unconstitutional because it wholly removed the jury from the fact-finding process: “[B]y permitting only the court to determine the amount of punitive damages, [the General Assembly] has in effect abrogated the common-law right of the jury to assess the amount of punitive damages.” Id. at 557, 644 N.E.2d 397. R.C. 2315.21 does not have this effect; it still permits the trier of fact to determine punitive damages. The subsequent application of a statute to this decision does not abrogate the established function of the jury.
{¶ 93} Arbino’s Sheward argument similarly fails. Although the majority discussed its view that a similar limit on punitive damages would unconstitutionally infringe on the jury’s fact-finding function, it did so in dicta before striking H.B. 350 as unconstitutional in toto. See 86 Ohio St.3d at 483-485, 715 N.E.2d 1062; id. at paragraphs two and three of the syllabus. We are therefore not required to follow that view as precedent. See Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 85 (Sweeney, J., dissenting), quoting Black’s Law Dictionary (6th Ed.1990) 454.
{¶ 94} However, even if we were bound by that reasoning, we would be compelled to revisit it. Since Sheward was decided, the United States Supreme Court has clarified the authority of state legislatures in setting punitive damages. “As in the criminal sentencing context, legislatures enjoy broad discretion in authorizing and limiting permissible punitive damages awards.” Cooper Industries, Inc. v. Leatherman Tool Group, Inc. (2001), 532 U.S. 424, 433, 121 S.Ct. 1678, 149 L.Ed.2d 674, citing BMW ofN. Am,., Inc. v. Gore (1996), 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (“States necessarily have considerable flexibility in determining the level of punitive damages that they will allow in different classes of cases and in any particular case”).
{¶ 95} This post -Sheward precedent conclusively establishes that regulation of punitive damages is discretionary and that states may regulate and limit them as a matter of law without violating the right to a trial by jury. R.C. 2315.21 represents the General Assembly’s exercise of its powers in this regard, and thus does not violate Section 5, Article I of the Ohio Constitution.
*488 2. Right to a Remedy and Right to an Open Court
{¶ 96} Arbino also argues that R.C. 2315.21 violates the right to a remedy in an open court. This right protects against laws that completely foreclose a cause of action for injured plaintiffs or otherwise eliminate the ability to receive a meaningful remedy. See Brennaman, 70 Ohio St.3d at 466, 639 N.E.2d 425; Sorrell, 69 Ohio St.3d at 426, 633 N.E.2d 504.
{¶ 97} Like the noneconomic-damages limits in R.C. 2315.18, the punitive-damages limits in R.C. 2315.21 do not deny plaintiffs the right to seek a remedy for their tort claims. Further, they do not eliminate the ability to seek a “meaningful” remedy for their injuries, primarily because punitive damages “are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.” Gertz v. RobeH Welch, Inc. (1974), 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789. “The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct.” Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 651, 635 N.E.2d 331.
{¶ 98} Because punitive damages are separate and apart from any remedy for a plaintiffs injuries, and because R.C. 2315.21 does not prevent potential plaintiffs from bringing a successful cause of action for their injuries, it does not violate Section 16, Article I of the Ohio Constitution.
3. Due Course of Law/Due Process
{¶ 99} Arbino also alleges that R.C. 2315.21 violates the “due course of law” provision in Section 16, Article I of the Ohio Constitution. For the same reasons expressed in Section III.A.3, we will use the rational-basis test for this challenge. Morris, 61 Ohio St.3d at 688-689, 576 N.E.2d 765.
a. Real and substantial relation to the general welfare of the public
{¶ 100} R.C. 2315.21 does not offend due process under this test. The General Assembly cited several studies and other forms of evidence upon which it relied in concluding that the civil justice system as it then existed was harming the state’s economy. S.B. 80, Section 3(A)(1) through (3), 150 Ohio Laws, Part V, 8024. It then reviewed punitive damages in view of this evidence and concluded that such awards were part of the problem. Section 3(A)(4)(a) and (b). The General Assembly noted that while punitive damages serve the purpose of punishing tortfeasors for certain wrongful actions and omissions, the “absence of a statutory ceiling upon recoverable punitive or exemplary damages in tort actions has resulted in occasional multiple awards * * * that have no rational connection to the wrongful actions or omissions of the tortfeasor.” Section 3(A)(4)(b)(ii). The uncodified section further explained the basis for limitations *489 on awards against small employers[7] and stated that the ratio used for the limitation derived from recent United States Supreme Court precedent. Section 3(A)(4)(b) and (c), 150 Ohio Laws, Part V, 8025.
{¶ 101} As noted in Section III.A.3, we accept that the evidence cited sufficiently demonstrated the need to reform the civil litigation system in the state. Using this evidence, the General Assembly found that the uncertainty and subjectivity associated with the civil justice system were harming the state’s economy. The reforms codified in R.C. 2315.21 were an attempt to limit the subjective process of punitive-damages calculation, something the General Assembly believed was contributing to the uncertainty.
{¶ 102} Arbino assails these findings, arguing that the General Assembly relied on “generalizations about the dilemma of punitive damages, without citation to any specific testimony or evidence supporting its claims.” While we agree with Arbino that the legislative record is thin in this regard, it nonetheless offers justifications sufficient to meet the requirement of a “real and substantial relation” to the general welfare of the public. The general goal of making the civil justice system more predictable is logically served by placing limits that ensure that punitive damages generally cannot exceed a certain dollar figure. Based on its review of the economic evidence, the General Assembly believes that such predictability will aid the state economy. That reasoning is sufficient under the first prong of the analysis, b. Neither arbitrary nor unreasonable
{¶ 103} Under the second prong, we find that the statute is neither arbitrary nor unreasonable. Setting the limitation at double the amount of compensatory damages received by the plaintiff ensures that the defendant may still be punished. Further, the exceptions for small employers and individuals strike a balance between imposing punishment and ensuring that lives and businesses are not destroyed in the process. This careful compromise represents a level of thought and attention to detail not seen in arbitrary or unreasonable statutes.
{¶ 104} For the foregoing reasons, R.C. 2315.21 does not offend the due-process protections in Section 16, Article I of the Ohio Constitution.
4. Equal Protection
{¶ 105} Arbino also challenges R.C. 2315.21 on equal-protection grounds. Similar to the noneconomic-damages limits discussed in Section III.A.4, this *490 enactment neither infringes on fundamental rights nor discriminates against suspect classes. Therefore, we review it under the rational-basis standard, upholding it if it is rationally related to a legitimate government purpose. See Williams, 88 Ohio St.3d at 530, 728 N.E.2d 342.
{¶ 106} For the same reasons discussed in Section III.A.4, R.C. 2315.21 is rationally related to the legitimate state interest of improving the state’s civil justice system and its economy. The limitations imposed on the inherently subjective process of calculating punitive damages were rational responses to the negative effects associated with the uncertainty of the civil litigation system. Although Arbino suggests that different methods could have been used, we will not consider them in the face of a constitutional statute. Because we find that the rational-basis test is satisfied, R.C. 2315.21 is permissible under Section 2, Article I of the Ohio Constitution.
5. Separation of Powers
{¶ 107} Arbino’s next challenge to R.C. 2315.21 falls under the separation of powers in Section 32, Article II of the Ohio Constitution. She generally alleges that the statute unconstitutionally seizes the judicial power to determine damages and that the General Assembly reenacted legislation previously deemed unconstitutional. As noted in Section III.A.5, statutory damages limits do not intrude on the judicial power to determine damages. The same reasoning applies here.
{¶ 108} The argument that the General Assembly simply reenacted a statute previously deemed unconstitutional similarly lacks merit. R.C. 2315.21 is admittedly similar to the punitive-damages statute struck down in Sheward. See Sheward, 86 Ohio St.3d at 483-484, 715 N.E.2d 1062. However, while the majority opinion discussed a potential conflict with the right to a trial by jury in Sheward, it did not invalidate the statute on those grounds, holding instead that H.B. 350 violated the separation of powers and the single-subject rule in toto. Id. at paragraphs two and three of the syllabus.
{¶ 109} While the General Assembly reenacted a statute deemed unconstitutional in a prior decision by this court, it did so in a way that alleviated the constitutional concerns advanced therein. Therefore, R.C. 2315.21 does not violate Section 32, Article II of the Ohio Constitution.
6. Single-Subject Rule
{¶ 110} Arbino’s final attack on R.C. 2315.21 invokes the single-subject rule in Section 15(D), Article II of the Ohio Constitution. However, as noted in Section III.A.6, Arbino did not challenge S.B. 80 in its entirety, and thus we decline to rule on this challenge.
*491 7. Constitutionality of R.C. 2315.21
{¶ 111} R.C. 2315.21 does not violate the right to a trial by jury, the right to a remedy, the right to an open court, the right to due process of law, the right to equal protection of the laws, or the separation of powers, and is therefore constitutional on its face.
IV. Conclusion
{¶ 112} The decision in this case affirms the General Assembly’s efforts over the last several decades to enact meaningful tort reforms. It also places Ohio firmly with the growing number of states that have found such reforms to be constitutional.[8] However, the issue remains a contentious one across the nation, with several states finding such statutes unconstitutional.[9]
*492 {¶ 113} We appreciate the policy concerns Arbino and her amici have raised. However, the General Assembly is responsible for weighing those concerns and making policy decisions; we are charged with evaluating the constitutionality of their choices. Issues such as the wisdom of damages limitations and whether the specific dollar amounts available under them best serve the public interest are not for us to decide. Using a highly deferential standard of review appropriate to a facial challenge to these statutes, we conclude that the General Assembly has responded to our previous decisions and has created constitutionally permissible limitations.
{¶ 114} Thus, we answer the first and third certified questions in the negative, finding R.C. 2315.18 and R.C. 2315.21 to be constitutional on their face. We decline to answer the second certified question on the constitutionality of R.C. 2315.20 for lack of standing.
Lundberg Stratton, O’Connor, and Lanzinger, JJ., concur.
Cupp, J., concurs separately.
O’Donnell, J., dissents in part.
Pfeifer, J., dissents.

. The question submitted for consideration but not accepted for review was “Is Ohio Revised Code § 2315.19, as amended by Senate Bill 80, effective, April 7, 2005, unconstitutional on the grounds as stated by the Plaintiffs?”

. See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell (2003), 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (excessive punitive-damages awards violate a defendant’s right of due process); Cooper Industries, Inc. v. Leatherman Tool Group, Inc. (2001), 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (requiring courts of appeals to review punitive-damages awards de novo); BMW of N. Am., Inc. v. Gore (1996), 517 U.S. 559, 574-575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (establishing three guideposts for reviewing punitive-damages awards for excessiveness).

. This statute does not apply to tort actions in the Court of Claims or against political subdivisions under R.C. Chapter 2744, nor does it apply to actions for wrongful death, medical or dental malpractice, or breach of contract. R.C. 2315.18(A)(7) and (H)(1) through (3).

. {¶ a} R.C. 2315.18(A)(2) defines “economic loss” as:
{¶ b} “(a) All wages, salaries, or other compensation lost as a result of an injury or loss to person or property that is a subject of a tort action;
{¶ c} “(b) All expenditures for medical care or treatment, rehabilitation services, or other care, treatment, services, products, or accommodations as a result of an injury or loss to person or property that is a subject of a tort action;
{¶ d} “(c) Any other expenditures incurred as a result of an injury or loss to person or property that is a subject of a tort action, other than attorney’s fees incurred in connection with that action.”
*474 {¶ e} “Noneconomic loss” is defined as “nonpecuniary harm that results from an injury or loss to person or property that is a subject of a tort action, including, but not limited to, pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, disfigurement, mental anguish, and any other intangible loss.” R.C. 2815.18(A)(4).

. For the purposes of R.C. 2315.21, “ ‘[t]ort action’ means a civil action for damages for injury or loss to person or property,” and includes products-liability actions but not actions for breach of contract or other agreement. R.C. 2315.21(A)(1). However, it does not apply to tort actions against the state in the Court of Claims (including actions against a state university or college as detailed in R.C. 3345.40(B)(1)) or to actions against political subdivisions that are commenced under *486 R.C. Chapter 2744. Id. at (E). It also does not apply if another section of the Revised Code meets one of the exceptions set forth in R.C. 2315.21(E)(1) through (4).

. “Small employer” is defined as an entity with not more than 100 full-time permanent employees or, if the company qualifies as a manufacturer, with not more than 500 full-time permanent employees. R.C. 2315.21(A)(5).

. In this regard, Section 3(A)(4)(b)(iii) of S.B. 80 stated that the limits were based on the economic capacity to maintain certain numbers of employees and the impact on the community at large, as set forth in the North American Industry Classification System and the United States Small Business Administration’s Office of Advocacy. 150 Ohio Laws, Part V, 8026.

. {¶ a} As of the date of this opinion, courts have upheld limits on noneconomic damages in at least 19 other jurisdictions: Alaska (Evans v. Alaska (Alaska 2002), 56 P.3d 1046); California (Fein v. Permanente Med. Group (1985), 38 Cal.3d 137, 211 Cal.Rptr. 368, 695 P.2d 665); Colorado (Garhart v. Colombia/HealthONE, L.L.C. (Colo.2004), 95 P.3d 571); Florida (Mizrahi v. Miami Med. Ctr., Ltd. (Fla.2000), 761 So.2d 1040); Idaho (Kirkland v. Blaine Cty. Med. Ctr. (2000), 134 Idaho 464, 4 P.3d 1115); Indiana (Johnson v. St. Vincent Hosp., Inc. (1980), 273 Ind. 374, 404 N.E.2d 585); Kansas (Samsel v. Wheeler Transp. Servs., Inc. (1990), 246 Kan. 336, 789 P.2d 541, overruled on other grounds in Bair v. Peck (1991), 248 Kan. 824, 811 P.2d 1176); Maine (Peters v. Soft (Me.1991), 597 A.2d 50); Maryland (Murphy v. Edmonds (1992), 325 Md. 342, 601 A.2d 102); Missouri (Adams v. Children’s Mercy Hosp. (Mo.1992), 832 S.W.2d 898); Montana (Meech v. Hillhaven W., Inc. (1989), 238 Mont. 21, 776 P.2d 488); Nebraska (Gourley v. Nebraksa Methodist Health Sys., Inc. (2003) , 265 Neb. 918, 663 N.W.2d 43 [$1.25 million cap on all damages]); New Mexico (Fed. Express Corp. v. United States (D.N.M.2002), 228 F.Supp.2d 1267); Oregon (Greist v. Phillips (1995), 322 Ore. 281, 906 P.2d 789); South Carolina (Wright v. Colleton Cty. School Dist. (1990), 301 S.C. 282, 391 S.E.2d 564); Texas (Rose v. Doctors Hosp. (Tex.1990), 801 S.W.2d 841 [cap on all damages]); Utah (Judd v. Drezga, 2004 UT 91, 103 P.3d 135); Virginia (Pulliam v. Coastal Emergency Servs. of Richmond, Inc. (1999), 257 Va. 1, 509 S.E.2d 307 [cap on all damages]); and West Virginia (Robinson v. Charleston Area Med. Ctr., Inc. (1991), 186 W.Va. 720, 414 S.E.2d 877).
{¶ b} At least ten states have upheld limitations on punitive damages, including provisions requiring that a certain percentage of awards be allotted to a designated public fund: Alaska (Reust v. Alaska Petroleum Contrs., Inc. (Alaska 2005), 127 P.3d 807); Florida (Gordon v. Florida (Fla.1992), 608 So.2d 800); Georgia (Mack Trucks, Inc. v. Conkle (1993), 263 Ga. 539, 436 S.E.2d 635); Indiana (Cheatham v. Pohle (Ind.2003), 789 N.E.2d 467); Iowa (Shepherd Components, Inc. v. Brice Petrides-Donohue & Assoc., Inc. (Iowa 1991), 473 N.W.2d 612); Kansas (Smith v. Printup (1993), 254 Kan. 315, 866 P.2d 985 [upholding requirement that courts, not juries, calculate punitive awards]); Missouri (Fust v. Missouri Atty. Gen. (Mo.1997), 947 S.W.2d 424); Montana (Meech v. Hillhaven W., Inc. (1989), 238 Mont. 21, 776 P.2d 488); North Carolina (Rhyne v. K-Mart Corp. (2004) , 358 N.C. 160, 594 S.E.2d 1); and Oregon (DeMendoza v. Huffman (2002), 334 Ore. 425, 51 P.3d 1232).

. Among those finding such attempts at reform unconstitutional are Illinois (Best v. Taylor Machine Works (1997), 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057 [striking down caps on noneconomic damages]); New Hampshire (Brannigan v. Usitalo (1991), 134 N.H. 50, 587 A.2d 1232 [same]); North Dakota (Ameson v. Olson (N.D.1978), 270 N.W.2d 125 [striking down cap on all damages]); South Dakota (Knowles v. United States, 1996 SD 10, 544 N.W.2d 183 [same]); and *492 Wisconsin (Ferdon v. Wisconsin Patients Comp. Fund, 2005 WI 125, 284 Wis.2d 573, 701 N.W.2d 440 [striking down cap on noneconomic damages]).