**[Cite as *McNalley v. Keiser*, 2025-Ohio-5561.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Thomas R. McNalley | Court of Appeals No.  L-25-00106 |
| Appellee | Trial Court No.  CI 2023 3328 |
| v. | |
| Vincent J. Keiser, M.D., et al. | **DECISION AND JUDGMENT** |
| Appellants | Decided: December 12, 2025 |

* * * * *

Chad M. Tuschman, Peter O. DeClark, and Jacob J. Hamilton, for appellee.

Steven J. Hupp, Ronald A. Margolis, and Douglas G. Leak, for appellants.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Vincent J. Keiser, M.D., appeals the May 19, 2025

judgment of the Lucas County Court of Common Pleas, finding that R.C. 2323.43(A)(3)

is unconstitutional as applied to plaintiff-appellee, Thomas R. McNalley. For the following reasons, we reverse the trial court judgment.

## I. Background

{¶ 1} Thomas McNalley filed this medical-malpractice action against Dr. Vincent Keiser, a radiologist, and Dr. Keiser's employer, Toledo Radiological Associates, Inc. He alleged that Dr. Keiser failed to diagnose a blood clot near his intestine, which led to the death of a large portion of his gut, necessitating removal of the dead gut and leaving him with short gut syndrome.

{¶ 2} McNalley's claim was tried to a jury. The jury rendered a verdict in favor of McNalley and awarded economic damages of $652,000; past noneconomic damages of $2,500,000; and future noneconomic damages of $2,000,000—a total award of $5,152,000.

{¶ 3} Dr. Keiser moved to enforce R.C. 2323.43(A)(3), which caps noneconomic damages for medical claims at $500,000 for plaintiffs who have suffered "permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system." McNalley opposed Dr. Keiser's motion. Raising concerns of both due process and equal protection, he argued that R.C. 2323.43(A)(3) is unconstitutional as applied to him. While he characterized his challenge as "as applied," the substance of his arguments suggested that he was also challenging the statute on its face.

2.

**{¶ 4}** The trial court concluded that R.C. 2323.43(A)(3)'s cap on noneconomic damages is unconstitutional as applied to McNalley. It declined to find the statute unconstitutional on its face.

**{¶ 5}** Dr. Keiser appealed. He assigns the following error for our review:

> ASSIGNMENT OF ERROR NO. 1: THE TRIAL COURT ERRED IN RULING THAT THE NONECONOMIC DAMAGES CAP IN R.C. 2323.43(A)(3) IS UNCONSTITUTIONAL AS APPLIED TO PLAINTIFF WHERE THE DAMAGES CAP OF R.C. 2323.43(A)(3) IS NOT ARBITRARY OR UNREASONABLE.

## II. Law and Analysis

**{¶ 6}** Dr. Keiser appeals the trial court's determination that R.C. 2323.43(A)(3) is unconstitutional on due-process grounds as applied to McNalley. "Whether a statute is constitutional is a question of law that we review de novo." *Portage Cty. Educators Assn. for Dev. Disabilities-Unit B, OEA/NEA v. State Emp. Relations Bd.,* 2022-Ohio-3167, ¶ 7.

**{¶ 7}** Legislation is afforded a strong presumption of constitutionality. *Yajnik v. Akron Dept. of Health, Hous. Div.,* 2004-Ohio-357, ¶ 16. Unless a statute concerns the exercise of a fundamental right or a suspect class, its constitutionality will be evaluated under the rational-basis test. *Arbino v. Johnson & Johnson,* 2007-Ohio-6948, ¶ 49; *State ex rel. Maras v. LaRose,* 2022-Ohio-3852, ¶ 17. For due-process challenges, under this test, a statute will be upheld as constitutional where "it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary." *Benjamin v. City of Columbus,* 167 Ohio St. 103 (1957),

3.

paragraph five of the syllabus; *Arbino* at ¶ 49. For equal-protection challenges, the party challenging the statute's constitutionality must demonstrate either "that there was no rational basis for the creation of the class itself or that those within the class are not being treated equally in the furtherance of a legitimate governmental interest." *Morris v. Savoy*, 61 Ohio St.3d 684, 691 (1991). The parties agree that the rational-basis test applies here, and McNalley's challenge to the statute is based on due-process grounds.

{¶ 8} The party challenging the constitutionality of a statute—in this case, McNalley—bears the burden of proving that the statute is unconstitutional. *Yajnik* at ¶ 16. "In determining the constitutionality of a legislative act, this court must first determine whether the party is challenging the act on its face or as applied to a particular set of facts." *Id.* at ¶ 14. This distinction is important because the burdens of proof differ significantly.

{¶ 9} To succeed in a facial challenge, the party challenging the constitutionality of the statute must demonstrate beyond a reasonable doubt that there is no set of circumstances under which the statute may be valid. *Brandt v. Pompa,* 2022-Ohio-4525, ¶ 27; *State ex rel. Dickman v. Defenbacher,* 164 Ohio St. 142 (1955), paragraph one of the syllabus. "In an as-applied constitutional challenge," however, "the party making the challenge bears the burden of presenting clear and convincing evidence of a *presently existing set of facts* that makes the statute unconstitutional and void *when applied to those facts*." (Cleaned up; emphasis added.) *Id.* "A holding that a statute is unconstitutional as applied prevents future application of the statute in a similar context, but it does not

4.

render the statute wholly inoperative." *Simpkins v. Grace Brethren Church of Delaware, Ohio,* 2016-Ohio-8118, ¶ 20, citing *Yajnik* at ¶ 14, citing *Ada v. Guam Soc. of Obstetricians & Gynecologists,* 506 U.S. 1011 (1992) (Scalia, J., dissenting).

{¶ 10} Here, the parties agree that the only issue for our review is whether the trial court erred when it concluded that R.C. 2323.43(A)(3) is unconstitutional on due-process grounds *as applied* to McNalley. There is no claim of error in the trial court's rejection of a *facial* challenge to the statute.[1]

{¶ 11} Before we address Dr. Keiser's assignment of error, we briefly summarize the history of some of the attempts to enact legislation capping noneconomic damages and the Ohio Supreme Court rulings on constitutional challenges to such legislation.[2] We also summarize the arguments made by the parties in the trial court and the trial court's rationale for finding the statute unconstitutional as applied.

## A. *Morris, Sheward,* and *Arbino* considered facial challenges to damages caps.

{¶ 12} R.C. 2323.43(A) became effective April 11, 2003. It caps noneconomic damages for medical claims at the greater of $250,000 or three times the plaintiff's economic loss, to a maximum of $350,000 for each plaintiff or $500,000 for each

---

[1] *See* McNalley's appellate brief at page 3 ("Relative to this matter, the constitutional challenge set forth by the Appellee in the Trial Court was an as-applied challenge based upon the Ohio Constitution's Due Process Clause.").

[2] In some of the cases we address, parties made additional constitutional challenges, including challenges on the grounds of right to a jury trial and separation of powers. We limit our discussion to the due-process and equal-protection challenges since those are the only challenges McNalley raised in the trial court.

5.

occurrence. R.C. 2323.43(A)(2). Under R.C. 2323.43(A)(3), these caps are increased to $500,000 for each plaintiff or $1 million each occurrence for either of the following:

(a) Permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system;

(b) Permanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life sustaining activities.

For the first time since their enactment, the constitutionality of these caps is currently before the Ohio Supreme Court in *Paganini v. Cataract Eye Ctr. of Cleveland,* 2025-Ohio-1846.

### 1. *Morris*, 61 Ohio St.3d 684

{¶ 13} In the 1970s, a $200,000 cap was enacted for noneconomic damages awarded in medical-malpractice actions. *Morris* at 687. Legislation, which included the cap, was signed into law within weeks after the Ohio State Medical Association reported that "'within the next several days, the number of physicians unable to continue medical practice in Ohio because of lack of adequate malpractice coverage will reach crisis proportions.'" *Id.*, quoting Gongwer News Service, Inc., Ohio Report (July 1, 1975) 3. The legislature explained that "'immediate action [wa]s necessary to insure a continuance of health care delivery to the citizens of Ohio.'" *Id.*, quoting Am.Sub.H.B. No. 682, Section 8; 136 Ohio Laws, Part II, 2843-2844.

{¶ 14} The constitutionality of the noneconomic-damages caps was eventually considered by the Ohio Supreme Court almost 15 years after they were enacted. In

6.

*Morris,* the Court reviewed due-process and equal-protection challenges to the damages caps.

{¶ 15} As to the due-process challenge, the Court acknowledged that its function was limited to determining whether the statute employed bears a "'real and substantial relationship' to public health or welfare or whether it is 'unreasonable or arbitrary.'" *Id.* at 690. It observed that the damages cap was "aimed at malpractice insurance rates, which had been rising rapidly in the years previous." *Id.* It found, however, that there had been no evidence presented demonstrating that there is a rational connection between awards over $200,000 and the setting of malpractice-insurance rates. To the contrary, the Court remarked, studies concluded that there was no relationship between insurance rates and damages caps. Accordingly, it found that the statute capping noneconomic damages in medical-malpractice cases did not bear a real and substantial relation to public health or welfare.

{¶ 16} The Court also found that it was "'irrational and arbitrary to impose the cost of the intended benefit to the general public solely upon a class consisting of those most severely injured by medical malpractice.'" *Id.* at 691, quoting *Nervo v. Pritchard,* 1985 Ohio App. LEXIS 7986, * 8. (5th Dist. Jun. 10, 1985). As such, it found that the statute was unreasonable and arbitrary.

{¶ 17} Turning to the equal-protection challenge, the Court recognized that the statute created two classes: (1) victims of medical malpractice, and (2) all other tort victims. Assuming that a crisis, in fact, existed in the medical-malpractice insurance

7.

industry, the Court stated that it "[did] not take issue on equal protection grounds with the legislature's determination to respond as it did" in enacting the statute. *Id.* It also noted that the statute did not—and could not under Article I of the Ohio Constitution—apply to claims involving death. It raised concerns about treating the most seriously-injured medical-malpractice victims differently from other medical-malpractice victims. However, the Court "stop[ped] short of finding the statute defective on equal protection grounds, despite the disparate treatment within the class" because the "'any conceivable set of facts' test . . . support[ed] a rational-basis argument for the distinctions made in this statute." *Id.* at 692.

### 2. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward,*
### 86 Ohio St.3d 451 (1999)

{¶ 18} After the *Morris* Court struck down the noneconomic-damages caps on due-process grounds, the legislature again endeavored to enact caps for noneconomic damages—this time for damages recoverable in *any tort action*—at "the greater of $250,000 or three times the economic loss, to a maximum of $500,000; or, in the case of certain specified types of permanent injuries, at the greater of $1 million or $35,000 times the number of years remaining in the plaintiff's expected life." *Sheward* at 486, citing R.C. 2323.54. The legislature expanded its stated justification for the statute, and within its stated justification, made its own declaration that the caps were constitutional:

> (P) In enacting the amendments to section 2305.01 and new section 2323.54 of the Revised Code, the General Assembly finds that the direct and indirect costs of disproportionate compensatory damages awards for noneconomic loss in tort actions increase the costs of health care delivery,

8.

manufacturing, and the delivery of services and that those increased costs have a significant negative impact upon the economic well-being of the citizens of the state. The General Assembly further finds all of the following:

(1) The limitation on the recovery of compensatory damages for noneconomic loss in tort actions is intended to stabilize the costs for health care delivery, manufacturing, and the delivery of services.

(2) The citizens of this state will benefit from stabilized costs for health care delivery, manufacturing, and the delivery of services.

(3) This state has a rational and legitimate state interest in stabilizing the costs of health care deliver, manufacturing, and the delivery of services.

(4) Limiting the amount of compensatory damages for noneconomic loss in tort actions furthers this rational and legitimate state interest.

(5) The distinctions among claimants with a permanent physical functional loss strikes a rational balance between potential plaintiffs and defendants in consideration of the intent of an award for noneconomic losses, while treating similar plaintiffs equally, acknowledging that such distinctions do not limit the award of actual economic damages.

(6) The Ohio Constitution, Article I, Section 19(A) provides that "The amount of damages recoverable by civil action in the courts for death caused by the wrongful act, neglect, or default of another, shall not be limited by law."; that provision refers only to economic or pecuniary losses and not to noneconomic or nonpecuniary losses, which by implication distinguishes among potential damages and supports the authority of the General Assembly to limit damages otherwise.

(7) Noneconomic damage caps have been determined by the Congressional Budget Office of the United States Congress, the United States Accounting Office, and the American Academy of Actuaries to effectively reduce loss payments, liability insurance premiums, and defensive medicine costs, upon which findings the General Assembly partially relies.

(8) The courts of common pleas were established by the Ohio Constitution as courts of general jurisdiction in Ohio, but the Constitution

itself limits their jurisdiction to that which is expressly conferred by the General Assembly, including jurisdiction to limit consideration of noneconomic damages. The Ohio Constitution, Article IV, Section 4(B) provides: "The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law." In addition, Section 18 of Article IV provides: "The several judges of the supreme court, of the common pleas, and of such other courts as may be created, shall, respectively, have and exercise such power and jurisdiction, at chambers, or otherwise, as may be directed by law." The Supreme Court of Ohio has uniformly held that the provisions of Article IV are not self-executing. Rather, the jurisdiction of the common pleas courts is limited to whatever the legislature may choose to bestow. . . .

*Id.* at 486-490, quoting Am.Sub.H.B. No. 350, 146 Ohio Laws, Part II, 4027–4028.

{¶ 19} In a facial challenge to the constitutionality of the statute, the Ohio Supreme Court in *Sheward* blasted the legislature for intruding upon the role of the judiciary by purporting to itself declare the statute constitutional. It further complained that "the General Assembly ha[d] merely expanded the scope of a statute declared unconstitutional by this court in the context of medical claims to include all tort claims, medical and otherwise." *Id.* at 490. The Court concluded that to the extent that the statute "continue[d] to impose the cost of the intended benefit to the general public solely upon a class consisting of those most severely injured by tortious conduct," it was "invalid on due process grounds because it is unreasonable and arbitrary, irrespective of whether it bears a real and substantial relation to public health or welfare." *Id.*

### 3. *Arbino v. Johnson & Johnson,* 2007-Ohio-6948

{¶ 20} Effective April 7, 2005, the legislature again imposed caps on noneconomic damages in general tort cases by enacting R.C. 2315.18. This statute limits recovery of

noneconomic damages to the greater of (1) $250,000 or (2) three times the economic damages up to a maximum of $350,000, or $500,000 per single occurrence. But it also provides that the limits do not apply if the plaintiff suffered "[p]ermanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system," or "[p]ermanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities." R.C. 2315.18 (B)(2) and (3). The Ohio Supreme Court considered a facial challenge to the constitutionality of these caps in *Arbino*. This time the Court rejected the due-process and equal-protection challenges to the statute.

{¶ 21} First, it found that there was a real and substantial relation between the statute and the general welfare of the public. It observed that the General Assembly had reviewed several forms of evidence, found that the current state of the civil litigation system "represents a challenge to the economy of the state of Ohio," and cited the following evidence in support of its finding:

> (1) a National Bureau of Economic Research study showing that states adopting tort reforms experienced growth in employment, productivity, and total output, (2) a 2002 White House Council on Economic Advisors study equating the cost of tort litigation to a 2.1 percent wage and salary tax, a 1.3 percent personal-consumption tax, and a 3.1 percent capital-investment-income tax, (3) a Harris Poll of 928 senior corporate attorneys showing that the litigation environment in a state greatly affected the business decisions of their companies, (4) a Tillinghast–Towers Perrin study showing that the tort system failed to return even 50 cents for every dollar to injured plaintiffs and that the cost of the national tort system grew at a record rate in 2001, with a cost equivalent to a five percent tax on wages, and (5) testimony from Ohio Department of Development Director Bruce Johnson on the rising costs of the tort system,

11.

which he believed were putting Ohio businesses at a disadvantage and hindering development.

*Arbino* at ¶ 53, quoting S.B. 80 at Section 3(A)(3)(a) through (f), 150 Ohio Laws, Part V, 80021–80025.

{¶ 22} The Court also took note of additional justifications for the legislation cited by the General Assembly, including that "noneconomic damages are difficult to calculate and lack a precise economic value"; "such damages . . . are inherently subjective and susceptible to influence from irrelevant factors, such as the defendant's wrongdoing"; "inflated damages awards were likely" under the then-existing system; and "the cost of these awards was being passed on to the general public." *Id.* at ¶ 54, citing S.B. 80 at Section 3(A)(6)(d) and (e).

{¶ 23} The Court concluded that unlike previous iterations of damages caps— which "lack[ed] evidence demonstrating a rational connection between the tort reforms taken and the public good to be achieved"—"the record here draws a clear connection between limiting uncertain and potentially tainted noneconomic-damages awards and the economic problems demonstrated in the evidence." *Id.* at ¶ 56. It emphasized that it was not the Court's role to "cross-check" the legislature's findings to ensure that it would agree with the General Assembly's conclusions. *Id.* at ¶ 58.

{¶ 24} Turning to the consideration of whether the statute is arbitrary or unreasonable, the Court this time determined that it was not. It explained that unlike the caps considered in *Morris,* 61 Ohio St.3d 684, which "imposed the cost of the intended

12.

benefit to the public solely upon those most severely injured," R.C. 2315.18 alleviates this concern "by allowing for limitless noneconomic damages for those suffering catastrophic injuries." *Arbino* at ¶ 59-60. As such, the Court found that the statute was "tailored to maximize benefits to the public while limiting damages to litigants." *Id.* at ¶ 61. It concluded that this logic was neither unreasonable nor arbitrary.

{¶ 25} As for the equal-protection challenge to the statute, the Court applied a rational-basis test. It determined that the statute bears a rational relationship to a legitimate government purpose because it advances the legitimate state interest of "reforming the state civil justice system to make it fairer and more predictable and thereby improving the state's economy." *Id.* at ¶ 69. It acknowledged that limits on noneconomic damages "may or may not be the best way to address the perceived problems in the civil justice system," but it emphasized that it is the General Assembly that is charged with making such policy decisions—not the Court. *Id.* at ¶ 70.

{¶ 26} The Court explained that it could not say that "the General Assembly's action lacked all rational relation to the legitimate state interest of improving the state's civil justice system and its economy" because (1) "[t]he limitations were aimed at reducing the uncertainty associated with the existing tort system and the negative consequences resulting from it"; and (2) "[t]he distinctions the legislature drew in refusing to limit certain injuries were rational and based on the conclusion that catastrophic injuries offer more concrete evidence of noneconomic damages and thus

13.

calculation of those damages poses a lesser risk of being tainted by improper external considerations." *Id.* at ¶ 72.

{¶ 27} With this background, we turn to the parties' arguments in this case.

### B. McNalley argued—and the trial court purported to find—that R.C. 2323.43(A)(3) is unconstitutional as applied.

{¶ 28} Dr. Keiser moved to apply the noneconomic-damages cap in R.C. 2323.43(A)(3). McNalley responded by challenging the statute as violating due process and equal protection.

### 1. McNalley's Position

{¶ 29} First, McNalley relied on the Eighth District's decision in *Paganini v. The Cataract Eye Center of Cleveland*, 2025-Ohio-275 (8th Dist.), which found the cap unconstitutional on due-process grounds as applied to the plaintiff. McNalley recited the plaintiff's argument in that case. He argued that the Ohio Medical Professional Liability Closed Claim Report issued by the Ohio Department of Insurance demonstrated that there were 47,299 medical-malpractice claims closed between 2005 to 2019, and of those, only 30 resulted in verdicts that were subject to capping. As such, he claimed, capping noneconomic damages for a very small group of highly injured people does not impact malpractice insurance rates beyond the cap on less severe injuries, and, therefore, does not bear a real and substantial relationship to medical-malpractice insurance rates. McNalley also argued that the $500,000 cap is arbitrary and unreasonable because "if an individual lost a leg in surgery due to a doctor's negligence his or her noneconomic

14.

damages would b[e] capped at $500,000 under R.C. 2323.43(A)(3), but if the same individual lost a leg in a car accident (caused by the very same doctor), the individual could recover all of his or her noneconomic damages for the catastrophic injury under R.C. 2315.18." He pointed out that numerous trial courts had found R.C. 2323.43(A)(3) unconstitutional—many of them citing this example—and urged the trial court to do the same.

{¶ 30} Next, arguing due process, McNalley claimed that the noneconomic caps bear no relation to the public health, safety, or morals because the 2019 report of the Malpractice Commission reported that only .32% of medical claims resulted in a plaintiff's verdict, thus a plaintiff's election to go to trial actually makes payment less likely. Moreover, he argued, caps for claims involving catastrophic injury are applied after trial and necessarily impact only claims the jury has found to be meritorious. McNalley claimed that the caps are irrational, arbitrary, and unreasonable as to him because the only reason R.C. 2315.18 survived constitutional scrutiny in *Arbino* was because it includes an exception for those determined to be catastrophically injured. He argued that this case is analogous to *Brandt*, 2022-Ohio-4525, where the Ohio Supreme Court found R.C. 2315.18 to be unconstitutional as applied to child victims of intentional criminal conduct, such as sexual abuse, because it did not include an exception for plaintiffs who have suffered permanent and severe *psychological* injuries.

{¶ 31} Finally, McNalley argued that R.C. 2323.43(A)(3) violates his right to equal protection because it treats victims of medical malpractice differently than victims

15.

of other torts given that R.C. 2315.18 eliminates caps where the plaintiff has suffered permanent and substantial physical injury. He insisted that the caps on noneconomic damages in R.C. 2323.43(A)(3) are not rational because they do not treat similarly-situated plaintiffs the same.

### 2. Dr. Keiser's Position

{¶ 32} In opposing McNalley's challenges to the constitutionality of the caps, Dr. Keiser recited the particular findings the General Assembly made in support of the caps on noneconomic damages for medical claims:

> (1) Medical malpractice litigation represents an increasing danger to the availability and quality of health care in Ohio.

> (2) The number of medical malpractice claims resulting in payments to plaintiffs has remained relatively constant. However, the average award to plaintiffs has risen dramatically. Payments to plaintiffs at or exceeding one million dollars have doubled in the past three years.

> (3) This state has a rational and legitimate state interest in stabilizing the cost of health care delivery by limiting the amount of compensatory damages representing noneconomic loss awards in medical malpractice actions. The overall cost of health care to the consumer has been driven up by the fact that malpractice litigation causes health care providers to over prescribe, over treat, and over test their patients.

> . . .

> (4)(a) The distinction among claimants with a permanent physical functional loss strikes a reasonable balance between potential plaintiffs and defendants in consideration of the intent of an award of noneconomic losses, while treating similar plaintiffs equally, acknowledging that such distinctions do not limit the award of actual noneconomic damages.

> (b) The limits on compensatory damages representing noneconomic loss as specified in section 2323.43 of the Revised Code, as enacted by this

act, are based on testimony asking the members of the General Assembly to recognize these distinctions and stating that the cap amounts are similar to caps on awards adopted by other states.

{¶ 33} Dr. Keiser highlighted additional findings by the General Assembly, including that medical malpractice insurers were leaving Ohio because they were faced with increasing losses related to rising noneconomic loss awards; many Ohio physicians and hospitals had difficulty obtaining affordable insurance coverage; investigation revealed that limiting noneconomic damages helps to reduce rising health care costs; limiting noneconomic damages for seriously-injured patients strikes a reasonable balance between the interests of both plaintiffs and defendants; evidence showed that malpractice premiums in other jurisdictions were reduced when noneconomic damages were meaningfully limited; and imposing noneconomic damages caps for catastrophic injuries had proven to be effective in addressing the health care crisis in other jurisdictions. Dr. Keiser insisted that the caps in R.C. 2323.43(A)(3) were part of the tort reform the *Arbino* Court specifically upheld as constitutional.

{¶ 34} With respect to McNalley's due-process challenge, Dr. Keiser argued that in undertaking a rational-basis analysis, the question is not whether the legislation genuinely accomplished the underlying legislative aim, but rather whether the goals of the policy were rationally related to the means chosen by the legislature. He emphasized that it need not be shown that the legislative aims were successful and courts must accept a legislature's generalizations even when there is an imperfect fit between the means and ends.

17.

{¶ 35} Dr. Keiser reiterated that the cap on noneconomic damages for claims of catastrophic injury in medical-malpractice cases sought to balance the interest of the injured claimants against the public's interest in ensuring the availability and affordability of health care services; excessive jury awards discouraged medical providers from practicing medicine in Ohio or informed their decision to avoid certain specialties; medical-malpractice insurers were reluctant to do business in Ohio, thereby affecting the ability to practice medicine in Ohio; and caps help to mitigate these concerns. Dr. Keiser claimed that "[t]he General Assembly took the exhaustive steps of collecting evidence, hearing testimony, and making other policy assessments that courts are ill-equipped to make."

{¶ 36} As for McNalley's argument that few cases rise to the level of "catastrophic injuries," Dr. Keiser insisted that this was irrelevant to the validity of the statute, particularly given the absence of evidence that catastrophic injury cases are so rare as to be statistically insignificant. He claimed that the General Assembly was not required to support the enactment of R.C. 2323.43(A)(3) mathematically. In sum, Dr. Keiser argued that the General Assembly's Statement of Intent and Findings was sufficient to show that R.C. 2323.43(A)(3) bears a real and substantial relation to the public's general welfare.

{¶ 37} Turning to whether R.C. 2323.43(A)(3) is "unreasonable" or "arbitrary," Dr. Keiser insisted that this is a low bar. Here, he maintained, the General Assembly identified a valid state interest to address the health care crisis and sought to do so by limiting inflated and subjective awards that it found harmful to the medical profession.

18.

Dr. Keiser insisted that it was not unreasonable or arbitrary for the General Assembly to cap noneconomic damages for catastrophic injuries as a means of ensuring the availability of affordable health care.

{¶ 38} As for McNalley's reliance on *Brandt*, 2022-Ohio-4525, Dr. Keiser contended that that reliance was misplaced because *Brandt* involved the general tort damage cap of R.C. 2315.18 and was decided in the context of an as-applied challenge for a very narrowly defined group. He predicted that the Ohio Supreme Court would accept review of this issue in *Paganini,* 2025-Ohio-275 (8th Dist.), and suggested that the Court may take a more restrained approach than the *Brandt* Court.

{¶ 39} With respect to McNalley's equal-protection challenge, Dr. Keiser argued that McNalley ignored the long legislative history and judicial holdings permitting medical claims to be treated differently from other tort claims. He urged that separate and distinct damages caps for medical claims are justified—and plaintiffs in medical claims are not similarly-situated to plaintiffs in other tort cases—given the findings of the General Assembly offered in support of R.C. 2323.43(A)(3).

{¶ 40} Finally, Dr. Keiser emphasized that none of the cases cited by McNalley are binding and many were trial-court decisions that had not been appealed. He insisted that *Morris,* 61 Ohio St.3d 684, is not controlling because the health-care crisis has worsened since the 1970s and unlike the present statute, the statute at issue in *Morris* lacked detailed legislative history. Contrary to McNalley's position, Dr. Keiser argued that *Arbino,* 2007-Ohio-6948, supports the constitutionality of R.C. 2323.43(A)(3).

19.

### 3. The Trial Court Judgment

{¶ 41} The trial court denied Dr. Keiser's motion to enforce the statutory caps and agreed with McNalley that R.C. 2323.43(A)(3) is unconstitutional as applied. It found that McNalley failed to demonstrate beyond a reasonable doubt that there are no conceivable circumstances upon which the statute would be valid—i.e., it found that McNalley had failed in his facial challenge to the constitutionality of the statute. It also found that the General Assembly has sufficiently demonstrated that the statute is related to the public health, safety, morals, or general welfare of the public. However, the trial court concluded that the statute arbitrarily and unreasonably limited McNalley's award at trial.

{¶ 42} First, the court acknowledged the legislative and judicial history of the General Assembly's attempts at capping noneconomic damages. It specifically discussed the previously-enacted statutes capping damages and the rulings on their constitutionality in *Morris, Sheward,* 86 Ohio St.3d 451, and *Arbino.* It also acknowledged the Eighth District's decision in *Paganini*, 2025-Ohio-275 (8th Dist.), as well as the various other cases where the constitutionality of R.C. 2323.43(A)(3) had been considered.

{¶ 43} The court compared R.C. 2323.43 and R.C. 2315.18. It observed that (1) the General Assembly found it necessary to include an exception to damages caps for those with catastrophic injuries in order to protect R.C. 2315.18 from constitutional scrutiny; (2) that exception played a key role in the Ohio Supreme Court's decision to uphold R.C. 2315.18's caps in *Arbino*; and (3) R.C. 2323.43 contains no such exception.

20.

The oft-repeated analogy—that a plaintiff who loses a limb after being struck by a vehicle driven by a doctor could recover unlimited noneconomic damages while the noneconomic damages awarded to a person who loses a limb because of the medical negligence of this same doctor would be capped at $500,000—resonated with the court. It agreed with the *Morris* Court that "it is arbitrary to impose the cost of the intended benefit to the general public solely upon a class consisting of those most severely injured by medical malpractice." *Morris* at 686. And because McNalley falls within the category of individuals most severely injured by medical malpractice, the court found that limiting his recovery under R.C. 2323.43(A)(3) was unreasonable and arbitrary.

{¶ 44} The court agreed that the numerous cases cited by McNalley invalidating R.C. 2323.43(A)(3)'s caps are not binding, but it explained that this caselaw still aided it in its decision. It observed that the General Assembly had rectified the problems identified in *Morris* by making sufficient findings in the legislative record to support the statute, but the trial court found that "at least on a case by case basis, an argument can be made that for catastrophic injuries, as applied to a plaintiff in a medical malpractice case, unreasonable and arbitrary caps still exist." It noted that McNalley would lose 77.6 percent of the jury's award if the noneconomic cap is enforced, placing him among the same small subset of plaintiffs identified in *Morris* who are among the most severely injured, yet who would be forced to bear the brunt of the General Assembly's desire to lower medical-malpractice insurance rates for the public's benefit.

21.

**C. This is not really an as-applied challenge.**

{¶ 45} The trial court unequivocally concluded that McNalley failed to demonstrate that R.C. 2323.43(A)(3) is unconstitutional on its face. Nevertheless, while purporting to find the statute unconstitutional on due-process grounds as applied to McNalley, the court specifically relied on *Morris, Sheward,* and *Arbino*—cases which quite clearly involved facial challenges to the legislation at issue. As we alluded to earlier, whether legislation is challenged on its face or as applied is a distinction with a significant difference. It dictates the burden and type of proof required for the challenge to succeed. This distinction is not addressed by Dr. Keiser. However, in undertaking a de novo review, as we are required to do here, we address the importance of this distinction.

{¶ 46} As previously explained, McNalley challenged the constitutionality of R.C. 2323.43(A)(3) as applied to his case. "[T]he party making the challenge bears the burden of presenting clear and convincing evidence of a *presently existing set of facts* that makes the statute unconstitutional and void *when applied to those facts*." (Cleaned up; emphasis added.) *Brandt*, 2022-Ohio-4525, ¶27. Because an as-applied challenge depends upon the presently existing facts of a case, a developed factual record is required. *Wymsylo v. Bartec, Inc.,* 2012-Ohio-2187, ¶ 22. This matter was tried to a jury, thus such a factual record exists. Problematically, none of those facts are before the court because the trial transcript is not part of this record.

{¶ 47} It is generally an appellant's responsibility to ensure that any necessary trial-court transcripts are made part of the record on appeal. App.R. 9(B). However, in

22.

this case, the parties briefed the motion to enforce the damages cap—and the trial court decided the motion—without any explanation of the particular facts and circumstances of this case beyond the fact that McNalley now suffers from short-gut syndrome and his damages award has been reduced by 77.6%. McNalley argues only that (1) Dr. Keiser concedes that McNalley suffered a serious and catastrophic injury; (2) McNalley will lose $4,000,000 of a $4,500,000 noneconomic-damages award if the cap is applied; (3) other non-binding decisions have found the cap in R.C. 2323.43(A)(3) unconstitutional; and (4) we should be guided by the Ohio Supreme Court's decision in *Brandt*, where the Court found that the noneconomic-damages cap in R.C. 2315.18—applicable to general tort claims—was unconstitutional as applied to the plaintiff because it capped noneconomic damages for plaintiffs who suffered permanent and severe psychological injury.

{¶ 48} Indeed, we do find *Brandt* instructive, but not for the reason suggested by McNalley.

{¶ 49} In *Brandt*, the Ohio Supreme Court held that R.C. 2315.18 was unconstitutional as applied to the plaintiff because it did not cap noneconomic damages for plaintiffs in tort actions who suffered "[p]ermanent and substantial *physical* deformity, loss of use of a limb, or loss of a bodily organ system" or "[p]ermanent *physical* functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities," but it did cap noneconomic damages for plaintiffs in tort actions who suffered permanent and severe *psychological* injury.

23.

{¶ 50} In *Brandt*, the Court summarized the trial evidence at length. *Id.* at ¶ 2-18. Very briefly stated, while still a minor, the plaintiff was drugged and raped multiple times by her friend's father. Afterwards and into adulthood, she exhibited a change in personality, became reclusive, struggled with debilitating anxiety and depression, could not keep a job, developed a heroin habit, experienced homelessness, attempted suicide, suffered interpersonal problems, had continued nightmares and panic attacks, and required continuous psychotherapy and other psychiatric intervention. Although the Court had rejected a facial challenge to the constitutionality of R.C. 2315.18 in *Arbino*, 2007-Ohio-6948, and had refused to find the statute unconstitutional as applied to another victim of sexual abuse in *Simpkin,* 2016-Ohio-8118, the Court found the statute unconstitutional as applied to Brandt. Emphasizing the facts of the case, it found that the rationale for rejecting the facial challenge to the statute's constitutionality in *Arbino* "[fell] away when applied to the facts of this case." *Brandt* at ¶ 37.

{¶ 51} Rather than supporting McNalley's position, *Brandt* illustrates the point we made above: that specific facts are needed to support an as-applied challenge to the constitutionality of a statute. Here, McNalley—who had the burden of demonstrating by clear and convincing evidence that R.C. 2323.43(A)(3) is unconstitutional as applied to the facts of his case—cited no case-specific facts in opposition to Dr. Keiser's motion to enforce the caps. By failing to cite facts specific to his case, it becomes clear that McNalley's position is really that the caps contained in R.C. 2323.43(A)(3) are

24.

unconstitutional as applied to all catastrophically-injured victims of medical malpractice. His argument is a disguised facial challenge to the statute—not an "as-applied" challenge.

{¶ 52} The same is true for the trial court's decision. The trial court held that because R.C. 2323.43(A)(3) contains no exception for catastrophic injuries, "at least on a case by case basis, an argument can be made that . . . as applied to a plaintiff in a medical malpractice case, unreasonable and arbitrary caps still exist." While purporting to find that the cap may be unreasonable and arbitrary on a case-specific basis, the only fact it cited in deeming that the cap is unreasonable and arbitrary as to McNalley is that McNalley would lose 77.6% of his damages award if the cap is applied. But every plaintiff that suffers a catastrophic injury is bound to face a steep reduction of noneconomic damages under the cap. The absence of a detailed factual analysis demonstrates that the trial court's concern was more broadly the statute's failure to except all cases of catastrophic injury from the noneconomic-damages cap. Without facts specific to this case, this isn't really a finding that the statute is unconstitutional as applied to McNalley. It is a finding that the statute is unconstitutional on its face.

{¶ 53} The Ohio Supreme Court has on several occasions called the injuries described in R.C. 2315.18(B)(3)—worded identically to R.C. 2323.43(A)(3)— "catastrophic injuries." *Arbino*, 2007-Ohio-6948, ¶ 47; *Brandt* at ¶ 31; *Simpkins,* 2016-Ohio-8118, ¶ 40; *Oliver v. Cleveland Indians Baseball Co. Partnership*, 2009-Ohio-5030, ¶ 12. McNalley argues that "because R.C. 2323.43 does not allow limitless noneconomic damages *for those suffering catastrophic injuries*[,] the constitutional guaranty of due

25.

course of law is unjustly withheld for medical negligence victims/individuals like Appellee Thomas McNalley." (Emphasis added.) In other words, McNalley argues that the statute is unconstitutional as to *all* members of the class to which R.C. 2323.43(A)(3) applies—not just him or a small subset of people like him. This is a facial challenge.

{¶ 54} In a facial challenge, the burden of proof is heightened. The party making the challenge must "demonstrate beyond a reasonable doubt that there is no set of circumstances under which the statute may be valid." *Brandt* at ¶ 27. The trial court concluded that McNalley failed to meet this burden. And the only issue presented in this appeal is whether R.C. 2323.43(A)(3) violates the constitutional right to due process as applied to McNalley. We conclude that McNalley has not only failed to demonstrate beyond a reasonable doubt that there is no set of circumstances under which the statute may be valid, he has also failed in his burden of presenting clear and convincing evidence of a presently existing set of facts that makes the statute unconstitutional and void when applied to those facts.

### D. We are not persuaded by the other cases cited by McNalley.

{¶ 55} McNalley cites numerous cases where courts—mainly trial courts—have found R.C. 2323.43(A)(3) unconstitutional. Ignoring the trial court decisions, we will address the two appellate court decisions he cites: *Paginini,* 2025-Ohio-275 (8th Dist.) and *Lyon v. Riverside Methodist Hospital*, 2025-Ohio-2991 (10th Dist.).

{¶ 56} In *Paganini*, the Eighth District agreed with the trial court that as applied to Paganini, application of the caps in R.C. 2323.43(A)(3) would violate his right to due

process. Significantly, the defendants argued that Paganini's challenge was actually a facial challenge and not an as-applied challenge. The Eighth District rejected this argument, instead finding that Paganini's argument was "specific to his unusual circumstances, namely that the statute requires him to forego 66.4% of the damages awarded to him."

{¶ 57} However, while purporting to deem the statute unconstitutional as applied, the court relied heavily on *Morris, Sheward,* and *Arbino*, all of which considered facial challenges to damages caps. The court found that "the legislative findings fail to demonstrate a real and substantial relationship between the capping of noneconomic damages for catastrophic injuries and malpractice insurance rates." *Id.* at ¶ 64. It also found that capping damages for catastrophic injuries is arbitrary and unreasonable and burdens those most severely injured by medical malpractice.

{¶ 58} Paganini's argument—and the court's holding—was not limited to the presently-existing facts of the case or a small subset of people like him. Paganini broadly challenged the caps as to all individuals to whom the caps would apply—i.e., all plaintiffs who had been catastrophically injured by medical malpractice. We would have agreed with the defendants in *Paganini* that this was really a facial challenge. For this reason, we are not persuaded by *Paganini*.

{¶ 59} In *Lyon*, the Tenth District considered both a facial challenge and an as-applied challenge to the caps. It rejected the facial challenge. It found that R.C. 2323.43(A)(3) bears a real and substantial relation to the public health, safety, morals, or

27.

general welfare of the public. *Id.* at ¶ 28. And it could not say "beyond doubt" that the caps were unreasonable or arbitrary. *Id.* at ¶ 30. The court found, however, that the caps were unconstitutional as applied to *Lyon.*

{¶ 60} Lyon's appellate brief indicated that Lyon will be in a nursing home for the rest of her life, unable to get out of bed; her life expectancy was 32 more years; and she had already spent eight years in a nursing home in this condition. The court articulated the following reasons for accepting her as-applied challenge to the caps: (1) her damages would be reduced by 57.4%; (2) R.C. 2323.43(A)(3) had never been adjusted for inflation since its enactment in 2003, and $500,000 in 2003, adjusted for inflation, equates to only $286,475.79 in 2025; (3) Lyon suffered severe and lasting harm; and (4) Lyon's age and the severity of her injury rendered the caps unfair and unreasonable as to Lyons.

{¶ 61} In *Lyon,* the court's decision at least articulated a presently-existing set of facts explaining why the caps were unreasonable and arbitrary as applied to Lyon. Here, the trial court decision and the parties' briefing are almost entirely devoid of facts. For us to view McNalley's challenge as anything other than a facial challenge to the constitutionality of R.C. 2323.43(A)(3), he needed to point to the specific facts of his case demonstrating that the caps are unreasonable and arbitrary. A challenge claiming that the statute is unreasonable and arbitrary as to all plaintiffs who have suffered catastrophic injuries is a facial challenge with a heightened burden of proof that McNalley has not met.

{¶ 62} Accordingly, we find Dr. Keiser's sole assignment of error well-taken.

28.

## III. Conclusion

{¶ 63} We conclude that the trial court erred when it denied Dr. Keiser's motion to enforce the statutory caps applicable to the award of noneconomic damages under R.C. 2323.43(A)(3). McNally purported to challenge the constitutionality of R.C. 2323.43(A)(3) as applied, however, he failed to articulate clear and convincing evidence of a presently-existing set of facts showing that the statute is unreasonable and arbitrary as applied to him. To the extent that McNalley argues that the statute is unconstitutional as applied generally to him and to others who have suffered catastrophic injuries, his challenge may only be interpreted as a facial challenge, which requires a heightened burden of proof that McNalley did not meet. While the trial court found that "at least on a case by case basis, an argument can be made that for catastrophic injuries, as applied to a plaintiff in a medical malpractice case, unreasonable and arbitrary caps still exist," the court cited nothing specific to the present case supporting the conclusion that application of the caps here was unreasonable and arbitrary.

{¶ 64} For these reasons, we find Dr. Keiser's assignment of error well-taken and reverse the May 19, 2025 judgment of the Lucas County Court of Common Pleas. We remand this matter for application of the statutory caps under R.C. 2323.43(A)(3). McNalley is ordered to pay the costs of this appeal under App.R. 24. All pending motions in this court are denied as moot.

Judgment reversed and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

_____
JUDGE

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.